IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. KAREN J. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-16 -346-F |
| | ) | |
| 1. WHITE FIELDS, INC., | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Karen J. Taylor, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Karen J. Taylor, is a Black adult female who resides in Oklahoma County, Oklahoma.

2. Defendant is White Fields, Inc., an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on claims of: (a) race discrimination, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and 42 U.S.C. §1981; (2) gender discrimination in the form of a sexual harassment, creation of a sexually hostile work environment, and retaliation in violation of Title VII; (3)

1

retaliation for opposing unlawful employment practices in the workplace, filing a Charge of Discrimination, and participating in an EEOC process in violation of Title VII and 42 U.S.C. §2000e-5; and (4) breach of contract in violation of Oklahoma state law.

4.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.  Plaintiff's corresponding state law claims arise out of the same core of operative facts and jurisdiction over such claims is vested in this Court under 28 U.S.C. § 1367.

5.     All of the actions complained of herein occurred in Oklahoma County, Oklahoma.  Defendant is doing business in such county and may be served in said county. Oklahoma County is located in the Western District of Oklahoma.  Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6.     Plaintiff (who is Black) began her employment with Defendant on or about December 12, 2011 as an Accounting Assistant.  In or around January 2013, Plaintiff was promoted to Accounting Manager.  Following her promotion, Plaintiff directly reported to Executive Director Frank Alberson (who is White).

7.     Plaintiff's job performance throughout her employment was at least satisfactory.  In fact, on or about December 22, 2014, Plaintiff received the highest possible rating on her performance evaluation.

8.     However, while employed with Defendant, Plaintiff was subjected to racially and sexually offensive comments by Alberson.  For instance, Alberson referred to Plaintiff

as "Foxy Brown" and "Cleopatra Jones," two Black female movie characters. Alberson also called Plaintiff "Cat Woman" and "meowed" at Plaintiff. On another occasion, Alberson told Plaintiff that all Black women use cocoa butter rather than lotion.

9. On another occasion, during a staff meeting, Alberson discussed his vasectomy. Specifically, Alberson made fun of Program Coordinator Matt Wiseman for taking several days off to recover from a vasectomy. Alberson said he returned the day after his vasectomy with a bag of frozen vegetables. Human Resources Specialist Evelyn Robinson (who is White) was present during this discussion and did nothing to stop this inappropriate conversation. In fact, Robinson laughed at Alberson's offensive statements.

10. Moreover, Alberson frequently referred to pictures of tulips hanging on an office wall as "sperm," describing his view of the artwork as sperm in explicit detail.

11. In or around November 2012, Plaintiff complained to Alberson about a sexually offensive comment made by an employee. Specifically, the male employee told Plaintiff on his last day of work that now that he was no longer employed, he wanted her to know that she had a "bangin' a** body." After reporting this to Alberson, Alberson frequently repeated the comment (though he knew it was offensive to Plaintiff) in staff meetings to Plaintiff and other employees, apparently finding humor in it. However, Plaintiff was highly offended and embarrassed by Alberson's recounting of the incident to other employees.

12. Although Plaintiff told Alberson on multiple occasions that he should

3

discontinue making such offensive comments, Alberson's conduct did not stop.

13. Plaintiff was also subjected to unequal terms and conditions of employment based on her race and gender. Particularly, at hire, Plaintiff was told that she would ultimately replace Business Manager Virgil Downing (who is White), who was retiring at the end of 2012. Alberson told Plaintiff she would be promoted to Accounting Manager earning $50,000 per year plus increased bonuses.

14. However, in or around December 2012, Downing told Plaintiff she was being promoted to Accounting Coordinator and earning $38,000, not $50,000. Plaintiff discussed with Alberson the difference in pay and title from what they had originally discussed. Ultimately, Alberson agreed that he would start Plaintiff as an Accounting Manager, but the starting pay would be $42,000, rather than the $50,000 previously agreed upon - allegedly due to budget issues. He also stated she would receive a raise to $50,000 in June 2013. Thus, based on Alberson's representations, Plaintiff accepted the Accounting Manager position. However, Alberson did not fulfill his agreement with Plaintiff as she did not receive an increase to $50,000.

15. As a result of Defendant's failure to increase her pay as promised, and Alberson's racially and sexually offensive conduct over her objections, Plaintiff filed an internal grievance on or about April 4, 2015. Plaintiff sent the grievance to Defendant's owners, Tom and Trent Ward. Plaintiff included within her grievance that she was being sexually harassed and subjected to a hostile work environment by Alberson and

memorialized specific instances of such conduct.

16. Plaintiff's grievance further noted that she was not being paid $50,000 as promised. Plaintiff noted that her male and/or White counterparts received pay increases as promised and that this was a violation of federal law, including the EPA. In addition, Plaintiff complained that Alberson and Robinson treated Plaintiff as an hourly employee because she was forced to submit time sheets, resulting in a reduction to her weekly salary when Plaintiff did not work over forty (40) hours.

17. Plaintiff received no response to her April 4, 2015 grievance. Therefore, she filed an EEOC Charge of Discrimination on or about April 20, 2015, alleging discrimination based on race, sex, and a hostile work environment.

18. On or about April 27, 2015, Plaintiff received a letter dated April 22, 2015 from Tom Ward, stating that Board Member Greg Dewey would be conducting an investigation related to Plaintiff's grievance and directed Plaintiff to contact Dewey to schedule an interview.

19. Plaintiff scheduled her interview on April 29, 2015. Present at the meeting were Dewey and Cindy Green. In addition to being a board member for Defendant, Dewey is the Vice President of Corporate and Human Resources for Tapstone Energy, a company owned by Tom Ward. Green is Associate Counsel and Compliance Director for Tapstone Energy.

20. During the interview, Plaintiff discussed in detail her allegations against

Alberson and Robinson. Plaintiff further informed Dewey and Green that she had filed a Charge of Discrimination with the EEOC.

21. On or about May 20, 2015, Dewey and Green notified Plaintiff that their investigation was concluded and no unlawful acts were committed, stating instead that "certain conduct was found to be unprofessional." Dewey and Green claimed discipline related to the unprofessional conduct would be issued and that training related to sexual harassment/hostile work environment and leave requests would be conducted.

22. Two weeks later, on or about June 3, 2015, Alberson unlawfully retaliated against Plaintiff through a documented verbal counseling. This was the first time Plaintiff was disciplined during her employment. Alberson alleged the reason for discipline was that Plaintiff had not submitted financials for a quarterly board meeting scheduled on or about June 12, 2015. Plaintiff told Alberson that, due to her work load and Alberson's denial of her requests for an accounting assistant, Plaintiff had not yet been able to complete the financials but would complete them before the board meeting. Plaintiff further noted that Alberson took no issue with Plaintiff submitting financials at any time prior to board meetings in the past (before she filed her grievance). Regardless, Alberson issued such discipline to Plaintiff.

23. On or about June 9, 2015, Plaintiff notified Dewey of her concern that such discipline was in retaliation for her April 4, 2015 grievance and EEOC Charge.

24. The next day, June 10, 2015, Alberson issued Plaintiff a written warning for

failure to complete the financials. Plaintiff notified Dewey of this retaliatory action as well.

25. On or about June 15, 2015, Dewey and Green met with Plaintiff to discuss the results of their retaliation investigation. Dewey told Plaintiff they found no retaliation.

26. At that time, Plaintiff was offered a severance agreement in exchange for her resignation. Dewey alleged Plaintiff was causing a "toxic" environment. Dewey strongly urged Plaintiff to accept such agreement, stating that if she did not accept the offer, she "could be left with nothing." At that time, Dewey told Plaintiff she was being placed on paid leave until June 22, 2015 to consider the severance agreement.

27. Plaintiff declined the offer and returned to work on or about June 23, 2015. Upon her return, Plaintiff was told that her additional requests for an accounting assistant were denied. She further discovered that many of her job duties were removed and given to Robinson. This resulted in confusion and errors being committed. For instance, Robinson was given access to Quick Books, which showed a significant negative balance upon Plaintiff's return. Plaintiff discovered that Robinson had mistakenly entered debits which Plaintiff had previously submitted, causing this deficit. Moreover, Plaintiff's access to financial records necessary to independently verify information for financial reports was removed. Thus, Plaintiff was unable to complete financial reports.

28. Due to these concerns, Plaintiff emailed Defendant's board members and owners Tom and Trent Ward on or about July 24, 2015. Plaintiff stated that she had been threatened since her EEOC filing and that the investigation of her prior grievances was not

fair or impartial. She further noted that she was denied an accounting assistant, although Downing had an accounting assistant in the past. Plaintiff also reported Defendant's failure to provide her with underlying financial information to independently verify and complete financials.

29. Green allegedly conducted an investigation into Plaintiff's July 24, 2015 grievance. On or about August 15, 2015, Green notified Plaintiff that Green found no basis for Plaintiff's retaliation complaint.

30. On or about August 24, 2015, Plaintiff submitted a grievance to Defendant's board members and owners regarding further retaliation. Particularly, Plaintiff's security code was deleted from Defendant's security system. Alberson saw Plaintiff attempting to access the building while the alarm was sounding, but did nothing to assist Plaintiff in turning off the alarm. Plaintiff later discovered that Robinson deleted her code on or about July 27, 2015, three (3) days after Plaintiff lodged retaliation allegations.

31. On or about August 28, 2015, Green notified Plaintiff of her termination, claiming the reason for termination was that Plaintiff had not turned in financial reports. However, Plaintiff was rendered unable to complete this task due to Defendant's refusal to provide Plaintiff an accounting assistant and Defendant's failure to provide her with information needed to independently verify the numbers within financial reports.

32. Such reason was merely pretext for unlawful discrimination and retaliation.

33. Upon information and belief, Plaintiff was replaced by a White individual.

34.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - Race Discrimination

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

35.   The acts described above constitute violations of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §1981.

36.   Plaintiff is entitled to relief under Title VII because she is Black, was qualified for her job, was terminated, and her position was not eliminated after her termination.

37.   Plaintiff is further entitled to relief because she is Black, was subject to unwelcome harassment based on race, and due to the harassment's severity and pervasiveness, such harassment altered a term, condition, or privilege of her employment and created an abusive work environment.

38.   Plaintiff is further entitled to relief under Title VII because she engaged in a protected activity by lodging complaints of race discrimination and a hostile work environment, she suffered an adverse action, and, as shown above, there is a causal link between the protected activity and the adverse action.

39.   As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

40.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT II - Title VII Gender

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

41.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination, the creation of a hostile work environment, and retaliation for her complaints of the same.

42.     Plaintiff is entitled to relief under Title VII because she is female, was qualified for her job, was terminated, and her position was not eliminated after her termination.

43.     Plaintiff is further entitled to relief because she was subjected to unwelcome harassment based on her sex and, due to the harassment's severity and pervasiveness, the harassment altered a term, condition or privilege of her employment and created an abusive work environment.

44.     Plaintiff is further entitled to relief under Title VII because she engaged in a protected activity by lodging complaints of sexual harassment and a sexually hostile work environment, she suffered an adverse action, and, as shown above, there is a causal link between the protected activity and the adverse action.

45.     As damages, Plaintiff has suffered lost earnings, past and future, emotional

distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

46. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT III - Title VII Retaliation

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

47. The matters alleged above constitute a violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §2000e-5 for retaliating against Plaintiff for opposing discriminatory practices within the workplace, filing a Charge of Discrimination with the EEOC and for participating in the EEOC process.

48. Plaintiff is entitled to relief under Title VII because she engaged in a protected act by lodging internal complaints (regarding race discrimination, racial and sexual harassment, hostile work environment and retaliation) and filing with the EEOC, she suffered an adverse action, and, as shown above, there is a causal link between the protected act and the adverse action.

49. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

50. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT IV - Breach of Contract

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

51. The matters described above constitute a breach of contract.

52. More particularly, Defendant promised to promote Plaintiff to the Accounting Manager position at $50,000 per year. Thereafter, Defendant stated it would pay only $42,000 but would raise to $50,000 in June 2013. Plaintiff accepted the position based on this promise. Defendant then breached the agreement by failing to increase Plaintiff's pay to $50,000.

53. Plaintiff suffered damages as a direct result of this breach.

54. As damages, Plaintiff seeks all remedies available under state law, including but not limited to back pay reimbursing Plaintiff for the difference between her actual earnings and the increased earnings she was denied as a result of the breach.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, liquidated damages, and punitive damages together with pre- and post-judgment interest, costs, attorney's fees and such other

relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 11th DAY OF APRIL, 2016.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #22341
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800    (telephone)
(405) 239-3801    (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED